**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **TEMPLOY, INC., and** ) | |
| **HARD HITTERS, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO 07-632-KD-C** |
| ) | |
| **COMPANION PROPERTY AND** ) | |
| **CASUALTY INSURANCE CO.,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This matter is before the Court on Plaintiffs' Motion to Continue Trial and Extend Deadlines (Doc. 54), the parties' respective responses and replies thereto, and all evidence offered in support thereof. Based upon the following, the Court finds that Plaintiffs' Motion to Continue is due to be **GRANTED** in part and **DENIED** in part.

I.    **Background**

The facts surrounding Plaintiffs' September 3, 2008 motion to continue forestall the Court's ability to rule on the pending motion for summary judgment and related motion to strike. This is because attached to Plaintiffs' motion is a document (representing an e-mail string from March 29, 2005-April 21, 2005 – TEMP ## 02601-02605) which Companion only produced on August 28, 2008, even though discovery closed on July 15, 2008. (Doc. 21). Plaintiffs highlight an April 21, 2005 e-mail in the document, in which Suzanne Rich, of Companion, states, "I have violated every time standard there is on this." (Doc. 54 at TEMP #02601). Plaintiffs assert that this document constitutes direct evidence of its breach of contract and negligence/wantonness claims for the calculation of insurance premiums by Companion and reveals that Companion was negligent in

completing Temploy's audit because it shows that Companion failed to comply with NCCI time requirements, and as such, provides additional grounds to oppose Defendant's summary judgment. This constitutes a wholesale retraction of Plaintiffs' prior concession of these claims on summary judgment. As a result, Plaintiffs seek a continuance of the trial of this matter, in order to have the opportunity to depose three individuals referenced in the e-mails at issue – Suzanne Rich,[1] Kim Medley and Michael Warner – as well as Suzanne Rich's supervisor, Tom Walsh.[2]  Plaintiffs also seek to supplement their opposition to Defendant's summary judgment in order to address the breach of contract and negligence/wantonness claims.

On September 11, 2008, this Court held a hearing on the pending motion, and after hearing the parties' respective arguments, issued an Order continuing the trial to the December 2008 trial term and rescheduling the Pretrial Conference for October 22, 2008.  (Doc. 62).  At that time, however, the Court reserved ruling on Plaintiffs' request to reopen discovery.  The Court now finds, that as a consequence of the late production of discovery on the part of Defendant, it would not be equitable to rule on the summary judgment and motion to strike without allowing for additional limited discovery.  Specifically, Plaintiffs should be afforded the opportunity to conduct discovery regarding the relevance of the e-mails to the breach of contract claim, for the reasons which follow.

---

[1] Plaintiffs have already taken the deposition of Suzanne Rich.  As such, Plaintiffs seek to re-depose Rich to ask her specifically about the emails.  (Doc. 54 at 2).

[2] Plaintiffs contend that according to Suzanne Rich's deposition testimony, Tom Walsh was her supervisor and an additional person who would have responsibilities regarding compliance with time lines in completion of audits as required by NCCI.  (Doc. 54 at 3 (citing Rich Dep.- Ex. D)).

## II.    Analysis

As noted *supra*, in response to Defendant's Motion for Summary Judgment, Plaintiffs conceded their breach of contract and negligence/wantonness claims related to the calculation of insurance premiums by Companion.  However, after Defendant produced the discovery at issue in this motion, Plaintiff retracted their prior concession of these claims on summary judgment.

Summary judgment should be granted only if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).[3]  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex, 477 U.S. at 323).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the

---

[3]  Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c).

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).  The mere existence of any factual dispute will not automatically necessitate denial of summary judgment; rather, only factual disputes that are material preclude entry of summary judgment.  Lofton v. Secretary of Dep't of Children & Family Serv., 358 F.3d 804, 809 (11th Cir. 2004), cert. den., 534 U.S. 1081 (2005).

Here, there are no genuine issues of material fact precluding summary judgment as to either Plaintiffs' negligence/wantonness claims or Plaintiff's breach of contract (for policy cancellation) claim.  Defendant has satisfied its initial burden, by showing this Court that there are no genuine issues of material fact that remain and that summary judgment is due to be granted, as a matter of law, regarding these claims.

**A.**     **Negligence/Wantonness**[4]

As a matter of law, summary judgment is due to be granted in favor of Defendant as to Plaintiff's negligence/wantonness claims.   Specifically, in an attempt to revive their negligence/wantonness claims on summary judgment, Plaintiffs assert that Suzanne Rich's e-mail statement – "I have violated every time standard there is on this[]" – constitutes direct evidence of Companion's negligence/wantonness regarding their calculation of insurance premiums.  In the First Amended Complaint, Plaintiffs allege, in relevant part, that Companion was negligent and wanton because it had a duty to charge Temploy the proper premiums, but breached that duty by

---

[4] The Court notes that currently pending as well, is Companion's Motion to Strike certain exhibits that Plaintiff filed in opposition to its summary judgment motion.  (Doc. 43).  One of these exhibits is the Affidavit of Jessica Ulmer, specifically portions of that affidavit.  Here, however, the Court has not relied upon any of those portions of Ulmer's Affidavit that are at issue in the motion to strike, and as such, those objections are not relevant here.

overcharging Temploy.  (Doc. 11 at ¶¶ 17-22).

 The general rule in Alabama is that the mere failure to perform a contractual obligation will not sustain an action sounding in tort.  See, e.g., Barber v. Business Products Center, Inc., 677 So.2d 223, 228 (Ala. 1996) (providing that "a mere failure to perform a contractual obligation is not a tort"); Sims v. Etowah County Bd. of Ed., 337 So.2d 1310, 1313 (Ala.1976) (same).[5]  As alleged, Plaintiffs' negligence/wantonness claims are rooted in duties or obligations which arose between Companion and Temploy pursuant to the contract that they executed – the workers' compensation insurance policy.  (Doc. 11 at ¶¶ 17-22).  The policy provides specifics as to how Companion will calculate premiums due for the workers' compensation coverage provided to Temploy.  (7/1/08 Rich Aff. at Ex. A (Policy, Part Five-Premium)).  Plaintiffs contend that they were overcharged insurance premiums on its policy and that those premiums were negligently/wantonly miscalculated in breach of said policy.  Clearly then, Plaintiffs' claims are founded upon the exact same conduct that serves as the basis for their breach of contract claim – the duty to calculate insurance premiums pursuant to the policy.  This duty springs from the policy (a contract) – not circumstances independent of, or extraneous to, that contract.  Indeed, the calculation and billing of premiums is necessarily a part of the contractual relationship between Temploy and Companion, leaving no room for an independent tort action.  See, e.g., Employers Ins. Co. of Wausau v. Crouse-Community Ctr., Inc., 489 F. Supp.

---

[5] There are recognized exceptions to the rule that failure to perform under a contract will not give rise to an action in tort. See, e.g., Powers v. CSX Transp., Inc., 190 F. Supp. 2d 1284, 1295 (S.D. Ala. 2002).  Moreover, the Eleventh Circuit has construed Alabama law as providing that "[i]t is possible for a tort to arise in Alabama out of a breach of a duty implied by or arising out of a contract." Brown-Marx Associates, Ltd. v. Emigrant Sav. Bank, 703 F.2d 1361, 1371 (11th Cir. 1983) (distinguishing between claims for breach of an obligation expressly set forth in the contract (which are not actionable in tort under Alabama law) and claims for breach of a duty implied by or arising out of the contract (which may be actionable in tort)).  Here, the Court notes that Plaintiffs have not alleged claims for fraud or bad faith in their First Amended Complaint.

2d 176, 181 (N.D.N.Y. 2007) (holding that an insurer owes its insured no duty to calculate retrospective premiums independent of its contractual duty to calculate costs and bills correctly).[6] Thus, Plaintiffs' negligence/wantonness claims are simply breach of contract claims improperly cast as tort claims, because the only obligations which Companion owed to Temploy arose out of the policy between them.  See Sabir v. ADT Security Servs., Inc., Slip Copy, 2008 WL 1924984, *4 (M.D. Ala. Apr. 30, 2008).  See also Hardy v. Jim Walter Homes, Inc., Slip Copy, 2008 WL 906455, *14 (S.D. Ala. Apr. 1, 2008).  As such, Plaintiffs are not entitled to reopen discovery related to the negligence/wantonness claims, because, as a matter of law, they are due to be dismissed.

Further, even assuming that some independent duty arose distinct from the contractual duties, Plaintiffs' negligence/wantonness claims for miscalculation of premiums are time-barred.  In Alabama, claims premised in negligence/wantonness are time-barred two years from the date the plaintiff's cause of action accrues.  ALA. CODE § 6-2-38(l).  See, e.g., Singer Asset Finance Co., LLC v. Connecticut General Life Ins. Co., 975 So.2d 375, 382 (Ala. Civ. App. 2007); Boyce v. Cassese, 941 So.2d 932, 945 (Ala. 2006); Jim Walter Homes, Inc. v. Nicholas, 843 So.2d 133, 135-136 (Ala. 2002).  "It is well settled under Alabama law that a negligence cause of action accrues

---

[6] As detailed in Crouse-Community Center, 489 F. Supp. 2d at 181:

* * *

The calculation and billing of premiums due is necessarily part of the contractual relationship between the insurer and the insured. The insurer owes the insured a contractual duty to calculate costs and bill correctly, but such a situation leaves no room for an independent tort duty to arise.

Crouse's pleadings do not suggest that anything other than monetary damages resulted from the alleged negligence in calculating the retrospective premiums. The alleged injury is purely monetary, and if any duty was breached, it was a purely contractual duty. Further, public policy does not require that a tort duty be imposed in this situation because any injury caused may be remedied under a claim or defense sounding in breach of contract rather than tort. No independent tort duty can exist in such a context where the only question is how much money the insured owes to the insurer. . . .

when the plaintiff can first maintain the action, regardless of whether the full amount of damage is

apparent at the time of the first injury." Piazza v. Ebsco Indus. Inc., 273 F.3d 1341, 1347 (11th Cir.

2001) (citing Booker v. United Am. Ins. Co., 700 So.2d 1333, 1339 (Ala.1997)). See also Spain v.

Brown & Williamson Tobacco Corp., 872 So.2d 101, 114 (Ala. 2003). In retrospective rated

insurance policies, such as the Companion policy, a cause of action for wrongful assessment of an

insurance premium accrues on the date that the premium payment is due, but refused. See, e.g.,

Reliance Ins. Co. Liquidation v. Griffin Dewatering Corp., Slip Copy, 2007 WL 1165557, *3-4

(N.D. Ind. Apr. 17, 2007).[7]

In the First Amended Complaint, Plaintiffs allege that from the start of Temploy's

contractual relationship with Companion, there was a dispute as to the amount of monthly premium

being charged. (Doc. 11 at ¶ 4). Specifically, Jessica Ulmer, for Temploy, testified that she did not

agree with the calculation of the premiums in the "original bills" in 2003. (Ulmer Dep. at 236-237,

---

[7] The court in Reliance., 2007 WL 1165557, *3, stated as follows:

* * *

There is no authority to support adopting an accrual rule unique to retrospective insurance
policy claims . . . . courts that have faced this question have not adopted a rule, generally
applicable to such agreements, that classifies retrospective adjustments as either enforceable
obligations or mere estimates. Rather, courts addressed the issue with the application of
contract law principles to the specific terms of the parties' contract. See LSB Industries, 296
F.3d at 945; Brookshire Grocery Company, 959 S.W.2d at 678 ("Pursuant to the 1986 Retro
Plan, these annual adjustments were simply estimates of the premiums dues under the 1986
policy. It was not until the Receiver adjusted the premiums pursuant to the original 1986
Retro Plan and demanded a deficiency payment . . . that the cause of action
accrued.")(emphasis in original); American Insurance Company, 554 N.W.2d at 186-87;
Potomac Insurance Company of Illinois, 2006 U.S. Dist. LEXIS 62224, 2006 WL 2521283
at *2 ("The court notes that a cause of action in an insurance case accrues on the date that
payment is due and has been rejected.").

. . . . Turning to the agreement, it is clear that beyond providing a mere estimate, each
retrospective adjustment by Reliance was a demand for payment. Correspondingly, Griffin
was obligated to pay each retrospective additional premium as it became due . . . . When
Griffin disputed this invoice and refused to pay, a cause of action for breach accrued.

365-366; Ulmer Aff. at ¶ 2).  See also 7/1/08 Rich Aff. at ¶¶ 3-7.  A review of the record reveals that Temploy's payrolls were re-audited and the premiums were recalculated, in response to Temploy's requests for re-audits,[8] in January 2003 and August 2003.  (7/1/08 Rich Aff. at ¶¶ 4-7, Exs. B-G; Ulmer Aff. at 2).  At the very latest then, Plaintiffs' cause of action for negligence accrued in 2003, when Companion recalculated the premium and demanded payment for the premium amounts, and Temploy contested the amounts.[9]  Plaintiffs, however, did not file suit until July 31, 2007 – approximately four years later.  (Doc. 1 at Ex. 1).  Thus, as a matter of law, Plaintiffs' negligence/wantonness claims are time-barred under the applicable statute of limitations and are due to be dismissed.  ALA. CODE § 6-2-38(l).  See, e.g., Singer, 975 So.2d at 382; Boyce, 941 So.2d at 945; Jim Walter Homes, 843 So.2d 133; Reliance, 2007 WL 1165557, *3-4.

## B.     Breach of Contract

In the First Amended Complaint, Plaintiffs allege that Companion breached its contract by charging premiums that were far in excess of what should be due and by wrongfully terminating/cancelling the insurance contract.  (Doc. 11 at ¶¶ 9-11).

First, as a matter of law, summary judgment is due to be granted in favor of Defendant as to Plaintiff's breach of contract claim for cancellation of Temploy's policy.  The Court's review of the record reveals that Plaintiffs have failed to address their breach of contract claim that Companion wrongfully cancelled Temploy's insurance policy.  Even assuming *arguendo*, that Plaintiffs' silence

---

[8]  A preliminary audit, which resulted in an increased premium, was also conducted in November 2002.  (Rich Aff. at ¶ 3).

[9]  The record reveals that no other revisions to, or recalculations of, the estimated premium were made until April 5, 2006.  (7/1/08 Rich Aff. at ¶¶ 7-8, Ex. H).  And while the premium was recalculated in April 2006, Temploy accepted that bill and paid it in full, effective March 6, 2007.  (Id. at ¶ 8).  See also Ulmer Aff. at ¶ 6, Exs. 9-10; Rich Dep. at 102).  Thus, the premium calculation that occurred in April 2006 is not at issue.

is not a concession, the record reveals that Plaintiffs agree that Temploy voluntarily allowed its policy to lapse and voluntarily decided to cancel the policy.  Significantly, Temploy – through its Rule 30(b)(6) corporate representative Jessica Ulmer – testified that Temploy stopped paying the premiums on the policy due to an inability to pay and that Temploy voluntarily allowed the policy to cancel.[10]  Thus, as a matter of law, this claim is due to be dismissed.

Second, as for Plaintiffs' claim that Companion breached its contract by charging excessive premiums, Plaintiffs again rely upon the newly discovered evidence in an attempt to revive this claim; specifically, the e-mail statement of Suzanne Rich, of Companion, that "I have violated every time standard there is on this."  (Doc. 54 at 2).  Plaintiffs assert that this statement provides direct

---

[10]  The testimony by Jessica Ulmer provides, in relevant part, as follows:

Q     And you already had a leasing firm in place; is that right?
A     When I was struggling so with the premiums, I started shopping for a
        leasing company, yes . . . .
                                    * * *
Q     Did you enter into the contract with Staff Pay before the
        expiration/cancellation of the Companion policy?
A     Yes, they did overlap.
Q     Did Temploy allow the Companion policy to cancel?
A     I just stopped paying premiums on it because I just couldn't do it. . . . . I
        let Barbara know that I was not going to be able to continue the policy.
Q     They didn't cancel it without you allowing it to?
A     Right.
                                    * * *
Q     The Companion policy canceled on May 2, 2003; is that right?
A     I believe so.
                                    * * *
Q     Paragraph 5 of the Complaint there.  When the Companion policy
        canceled in May 2005, Temploy voluntarily allowed the policy to cancel;
        is that right?
A     Yes.
                                    * * *
(5/6/08 Ulmer Dep. at 254, 260-261, 350). Evidence provided by Companion's Premium Audit Coordinator, provides additional support: "[t]he policy cancelled for nonpayment of premium on May 2, 2003.  Had Temploy continued to make its premium payments, the policy would not have cancelled." (Rich Aff. at ¶ 6).

9

evidence of Companion's breach of contract regarding the premiums. (Id.) However, this statement relates to the timing requirements surrounding audits – not the calculation of premiums. At best, this statement relates to contractual obligations or duties that Companion may have owed to NCCI as a Servicing Carrier of the Plan under NCCI's Servicing Carrier Performance Standards (requiring, in relevant part, that a carrier to comply with all statutes, regulations and Plan rules as well as the servicing carrier performance standards establish by the Plan Administrator). (See, e.g., CPCI ##00612-00614, 00617-00623, 00629-00630, 00653-00660). As such, any alleged failure on the part of Companion to comply with NCCI time requirements for audits would be an issue between Companion and NCCI – not Plaintiffs and Companion. In sum, whether Companion properly calculated the premiums is a matter that is wholly distinct from whether Companion complied with NCCI time requirements.

Nevertheless, discovery is due to be reopened on the breach of contract claim. The policy indicates that audits are used to properly calculate the premium.[11] A review of the newly produced e-mail string raises questions regarding the quality, as opposed to the timeliness, of previous Temploy audit(s) (e.g., noting that the audit "was done with [only] a payroll book and general ledger[,]" "[t]his has to be the worst audit I have ever seen for a Temp Agency Final . . . I am very upset with seeing this even submitted to me in the manner the audit was conducted makes me worried if the auditor is capable of doing a Temp Agency even with the guidelines provided by

---

[11]  The insurance policy between Companion and Temploy indicates, in the section entitled "Part Five-Premium," that "[a]ll premium[s] for this policy will be determined by our manuals of rules, rates, rating plans and classifications[;] "[t]he final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by the policy[]" but if the policy is canceled by Companion, "final premium will be calculated pro rata based on the time this policy was in force[]" and "[f]inal premium will not be less than the pro rata share of the minimum premium[;]" and "[i]nformation developed by audit will be used to determine final premium." (Policy at Part Five-Premium at ¶¶ A, E and G).

Companion[,]" and "this leaves a lot of questions – and $27,000 difference in payroll[]").  (TEMP ## 02601, 02604, 02605).  Thus, to the extent that the results of the audits were tied to contested premium calculations, Plaintiffs are entitled to discovery on this issue.

III.    **Conclusion**

        In light of the foregoing, Defendant's Motion for Summary Judgment as to Temploy's negligence/wantonness claims and breach of contract claim (related to cancellation of the policy)[12] is **GRANTED**.  Defendant has met its burden and established that no genuine issues of material fact remain regarding these claims and that, as a matter of law, they are due to be dismissed.

        Additionally, Plaintiffs' motion to reopen discovery is **GRANTED** in part.  Discovery is hereby reopened for the limited purpose of allowing Plaintiffs the opportunity to conduct the depositions of Suzanne Rich (re-depose), Kim Medley, Michael Warner and Tom Walsh, to inquire about the e-mail string at issue, and Defendant the opportunity to re-depose Plaintiffs, so that both parties may further explore the breach of contract claim that remains.  The depositions must be completed no later than **October 24, 2008**.  The parties are also ordered to comply with any outstanding and previously filed document requests by **October 24, 2008.**

        Moreover, if, as a result of this limited discovery, the parties seek to revisit the breach of contract claim on summary judgment, the Court will permit narrow briefing, ***solely on this claim***, as follows: any supplement to Plaintiffs' Opposition must be filed no later than **October 31, 2008**; and Defendant's reply, if any, must be filed no later than **November 5, 2008.**  No further briefing will be permitted.

        Further, the Pre-trial Conference is re-set for **November 20, 2008** at **12:00 p.m.**

---

[12] The defamation claims will be addressed by separate order.

11

**DONE** and **ORDERED** this the 6th day of October, 2008.

 S/ Kristi K. DuBose            
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**